1  ROBERT A. HUDDLESTON, ESQ., SBN 83662
   JOAN E. PRESKY, ESQ., SBN 144272
2  **HUDDLESTON LAW GROUP**
   500 Ygnacio Valley Road, Suite 300
3  Walnut Creek, CA 94596
   Telephone:   (925) 947-0100
4  Facsimile:   (925) 947-0111

5  Attorneys for Plaintiff TOM AZZARELLO

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

11 TOM AZZARELLO,                          ) CASE NO. 3:08-cv-2371-MEJ
                                           )
12              Plaintiff,                 ) Date:       July 10, 2008
                                           ) Time:       10:00 a.m.
13       v.                                ) Ct. Room:   B, 15th Floor
                                           ) Judge:      Hon. Maria-Elena James
14 NAVAGILITY LLC, a limited liability     )
   corporation; ANTHONY M. DI MARCO, an    ) **OPPOSITION TO MOTION TO DISMISS**
15 individual and DOES 1 - 10, inclusive,  )
                                           )
16              Defendant.                 ) Action Filed: May 8, 2008
                                           )

**HUDDLESTON LAW GROUP**
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    The Exercise of Personal Jurisdiction is Proper . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Venue is Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.    Transfer of the Action is not Mandated by Equitable Considerations . . . . . . . . . 12

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**HUDDLESTON LAW GROUP**
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

## TABLE OF AUTHORITIES

**Cases**

A.J. Industries, inc. v. United States Dist. Ct.
503 F.2d 384, 389 (9th Cir. 1974) .................................................. 12

Amoco Egypt Oil Co. v. Leones Navigation Co.
1 F.3d 848: 851 (9th Cir. 1993) ..................................................... 9

Asahi Metal Industry Co., Ltd. v. Superior Court of California
480 U.S. 102 (1987) ................................................................ 9

Ballad v. Savage
65 F.3d 1495, 1500 (9th Cir. 1995) .................................................. 9

Bates v. C&S Adjusters, Inc.
980 F.2d 865, 867 .................................................................. 11

Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.
42 F.Supp.2d 821, 834 (N.D.Ill. 1999) ............................................... 12

Burger King Corp. v. Rudzewicz
(1985) 471 US 462, 477-478 ......................................................... 8, 9

Commodity Futures Trading Comm'n v. Savage
611 F.2d 270, 279 (9th Cir. 1979) ................................................... 12

Digital Equip. Corp. v. Alta Vista Technology, Inc.
960 F. Supp. 456, 466 (D Ma 1997) ................................................... 10

First of Mich. Corp. v. Bramlet
141 F.3d 260, 264 (6th Cir. 1998) ................................................... 11

Hall v. LaRonde
(1997) 56 Cal.App.4th 1342 .......................................................... 10

Helicopteros Nacionales de Colombia v. Hall
(1984) 466 U.S. 408, 414 ............................................................ 8

In re Volkswagen of America, Inc.
506 F.3d 376, 385 (5th Cir. 2007) ................................................... 12

International Shoe Co. v. Washington
(1945) 326, U.S. 310, 316 ........................................................... 7

Internet Doorway, Inc. v. Parks
138 F.Supp.2d 773, 774 (S.D. Miss. 2001) ............................................ 10

Jeller Fin'l Inc. v. Midwhey Powder Co.
883 F.2d 1286, 1293 (7th Cir. 1989) ................................................. 13

Jenkins Brick Co. v. Bremer
321 F.3d 1366, 1372 (11th Cir. 2003) ................................................ 11

Keaton v. Hustler Magazine, Inc.
(1984) 465 U.S. 770, 776 ............................................................ 8

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax (925) 947-0111

Kulko v. Calif. Sup. Ct.
(1978) 436 U.S. 84, 92 .................................................. 7, 8

Lewis v. ACB Business Services, Inc.
135 F.3d 389, 413 (6th Cir. 1998) ........................................... 12

Los Angeles Memorial Coliseum Comm'n v. NFL
89 F.R.D. 497, 499 (C.D.Cal. 1981), aff'd (9th Cir. 1979) 726 F.2d 1381 .......... 12

McGee v. International Life Ins. Co.
(1957) 355 U.S. 220, 78 S.Ct. 199 ............................................ 9

Ochoa v. J.B. Martin & Sons Farms, Inc.
287 F.3d 1182, 1188, fn. 2 (9th Cir. 2002) .................................... 8

Palace Exploration Co. v. Petroleum Develop. Co.
316 F.3d 1110, 1121 (10th Cir. 2003) ......................................... 12

Pecoraro v. Sky Ranch for Boys, Inc.
340 F.3d at 558, 563 (8th Cir. 2003) .......................................... 11

Reed Elsevier, Inc. v. Innovator Corp.
105 F.Supp.2d 816, 821 (S.D.OH. 2000) ....................................... 12

Scher v. Johnson
911 F.2d 1357, 1365 (9th Cir. 1990) ........................................... 9

Securities Investor Protection Corp. v. Vigman
764 F.2d 1309, 1317 (9th Cir. 1985) ........................................... 12

TruServe Corp. v. Neff
6 F. Supp.2d 790, 792 (N.D.Ill. 1988) .......................................... 11

World-Wide Volkswagen Corp. v. Woodson
444 U.S. 286, 297 ......................................................... 8, 9

Yahoo! Inc. v. La Ligue Contre Le Racisme Et LIAntisemitisme
433 F.3d 1199, 1206 (9th Cir. 2006)(en banc) ................................. 8, 9

Zippo Mfr. Co. v. Zippo Dot Com, Inc.
952 F. Supp. 1119, 1123 (W.D. Pa. 1997) ..................................... 10

**Statutes and Rules**

28 U.S.C. §1391(a)(2) ...................................................... 11

28 U.S.C. §1391(b)(2) ...................................................... 11

28 U.S.C. §1406 ........................................................... 10

Federal Rule of Civil Procedure 12(b)(3) ..................................... 10

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

Mtn.Dismiss.Opp.wpd/mh

OPPOSITION TO MOTION TO DISMISS
-iii-

## I. INTRODUCTION

Defendant NAVAGILITY LLC ("NAVAGILITY") has two faces. The one that is presented to clients, investors and creditors is a Web-based company with contacts throughout the United States, and global potential. The one that it presents to this Court is a company based in New York with no outside contacts. It avoids telling the Court that the entire company is run through the Web, that virtually all communications are through e-mail, and, most importantly, that it reached out to plaintiff TOM AZZARELLO ("AZZARELLO") through e-mail, knowing that he lived in California, both to invest and to borrow money. Moreover, it attempts to obfuscate the fact that the instant Complaint is not based on AZZARELLO's investment in NAVAGILITY, but rather on a simple failure to repay a loan as promised, a loan that was made as the direct result of NAVAGILITY reaching out to AZZARELLO and asking him to loan money. Finally, NAVAGILITY is dishonest in suggesting that multiple New York witnesses are important; in fact, there will be no need for the testimony of anyone other than NAVAGILITY's majority owner, Tony DiMarco ("DiMarco"), AZZARELLO, and AZZARELLO's brother (who lives in Italy). In short, NAVAGILITY disingenuously hides or circumvents all the facts that lead inevitably to the exercise of personal jurisdiction. This is a simple case of a New York company reaching out to a California resident for money, and then not repaying that money. Personal jurisdiction is proper. The motion should be denied.

## II. FACTUAL BACKGROUND

Defendant NAVAGILITY is, as described on its Web site (visited June 2008) "an excited Web 2.0 social media company." It is an interactive Web-based business. It:

> was formed in 2005 with a focus on personal career management, enabled through the patent-pending NavAgility® Power Profile software. This software helps people communicate their career experiences on a visual timeline. NavAgility has relationships with many prestigious academic institutions, who offer NavAgility to their students and alumni through a co-branded CareerPath program. The University Continuing Education Association (UCEA), representing over 300 top universities and colleges, is collaborating with NavAgility on a National Talent Market Initiative (NTMI).

(See Web site, www.navagility.com.)

////

////

---

OPPOSITION TO MOTION TO DISMISS
Mtn.Dismiss.Opp.wpd/mh                    1

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

   In its motion, NAVAGILITY attempts to paint a picture of itself as New York based business with no contacts elsewhere. In fact, NAVAGILITY has no office at all, but rather is operated from DiMarco's garage. DiMarco "doesn't need a big office building" because NAVAGILITY is "still virtual." As described by DiMarco, NAVAGILITY is "a social networking and social media company [which] positions us in a much more attractive growth market ..." NAVAGILITY is an "online community." NAVAGILITY is a Web-based business that DiMarco runs "out of an office built into half of what had been a garage at his Poughkeepsie home." (AZZARELLO decl., ¶¶ 39-40 and Exs. N-O.)) Nothing in any document, filed in conjunction with this motion or elsewhere, indicates that the NAVAGILITY Web-based business is limited to New York.

   To the contrary, NAVAGILITY has contacts nationally. It collaborated in 2006 with the University Continuing Education Association (UCEA) "on a national online talent development network," which will "provide Higher Education institutions with advanced technology that benefits career-minded adult learners" who "have absolute control over the visibility of their data and identity in the system" through the database." (Id., ¶ 45 and Ex. P.)

   In an e-mail that DiMarco sent to AZZARELLO in April 2006, he identified the University of California as one of the universities that were "on board." (Id., ¶¶ 46-47 and Ex. Q.) NAVAGILITY, in a 1Q06 update e-mailed in April 2006 to investors, also said the University of California Irvine is one of 20 universities/colleges "on board and are enabling each of them to begin marketing NavAgility to their constituencies." Also mentioned are Southern Oregon University and Linfield College, located in the West. Three others are in the Mid-West, two are in the South, thirteen are in the Northeast, and four are in New York. (Id., ¶ 47 and Ex. Q.) In a NAVAGILITY e-mail on April 25, 2005, DiMarco refers to UC Berkeley and several other universities outside of New York as "Our hot list from the conference." (Id., ¶ 48 and Ex. R.)

   The e-mail also states ".....we have had a "hot level of interest" from Google. The e-mail also mentions NavAgility's business broker having "direct contact" with Google and working towards a meeting. Google is based in California. ( Id., ¶ 48 and Ex. R.) In a NAVAGILITY e-mail to AZZARELLO dated July 20, 2006 with an attached 2Q06 Update, DiMarco says, "We have made very high level contacts with Yahoo!, HotJobs, CareerBuilder, and News Corp as potential strategic

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

Mtn.Dismiss.Opp.wpd/mh

OPPOSITION TO MOTION TO DISMISS
2

investors (as well as potential ultimate acquirers)." Yahoo's headquarters is in Sunnyvale, California. HotJobs is a company that was acquired by Yahoo some years ago. CareerBuilder is a huge, Web-based on-line business. News Corp. is a huge billion dollar company. NAVAGILITY was reaching out to these companies to expand nationally and globally. (Id., ¶ 50 and Ex. S.)

In a NAVAGILITY e-mail to AZZARELLO dated September 13, 2006, DiMarco says, "we have begun to directly engage our most likely acquirers, including: Yahoo!, NewsCorp, Google, AOL and others." ( Id., ¶ 51 and Ex. T.) In a NAVAGILITY e-mail of April 2, 2007 addressed to investors, which was sent to AZZARELLO, DiMarco says NAVAGILITY contracted Corporate Finance Associates (CFA) to sell the company. The investment banker with CFA responsible for closing the deal is Gary Roelke. As stated in the e-mail, "Gary is teamed with another CFA executive based in the Silicon Valley who is responsible for putting together the marketing packaging and prospect list and networking with the high-tech sector." (Id., ¶ 52 and Ex. U.)

In the spring of 2005, NAVAGILITY took part in a trade show convention in Las Vegas, reaching out to clients from all over the country and presenting themselves to Human Resource executives and recruiters. (Id., ¶ 53.)

In a NAVAGILITY Business Plan Executive Summary sent on September 13, 2006, DiMarco refers to NAVAGILITY's reach as global. (Id., ¶ 54 and Ex. V.)

DiMarco in his declaration tries to make NAVAGILITY look like a little office in New York that sells widgets to New York businesses and never looks outside of New York for any reason or for any purpose. Not so. NAVAGILITY reached out to AZZARELLO to get him to invest and to loan money, knowing that he lived in California. Also, the evidence set forth in the AZZARELLO declaration shows that NAVAGILITY is a Web-based business that reaches out to investors, lenders, clients and potential acquirers all over the United States, including California.

AZZARELLO invested in NAVAGILITY in 2004. He is also a creditor. This lawsuit does not have to do with the investment. It is a simple claim, based on a loan that NAVAGILITY failed to repay. AZZARELLO loaned money to NAVAGILITY in 2007 pursuant to what NAVAGILITY characterized as a "bridge loan." Wikipedia defines a bridge loan as:

////
HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

"interim financing for an individual or business until permanent or the next stage of financing can be obtained. Money from the new financing is generally used to 'take out' (i.e. to pay back) the bridge loan, as well as other capitalization needs. Bridge loans are typically more expensive than conventional financing because of a higher interest rate, points and other costs that are amortized over a shorter period, and various fees and other 'sweeteners' (such as equity participation by the lender in some loans). To compensate for the additional risk the lender may require cross-collateralization and a lower loan-to-value ratio. On the other hand they are typically arranged quickly with relatively little documentation."

NAVAGILITY tries to characterize the "bridge loan" as an investment, but it was a loan that was supposed to be repaid quickly.

During all relevant times, AZZARELLO lived in California. NAVAGILITY has known at all relevant times, since prior to AZZARELLO's investment in 2004, that he lived in California. AZZARELLO invested $50,000 in NAVAGILITY in December of 2004. His brother was "Chief Experience Officer" for NAVAGILITY. He lived in New York and worked out of his home. One of his brother's responsibilities was to find investors, including what NAVAGILITY chose to call "angel investors."[1] AZZARELLO is not affluent. He works for a living out of his rental home as a sales person. In 2004, AZZARELLO's brother contacted AZZARELLO about investing in NAVAGILITY. He also asked AZZARELLO if he knew of anyone who would be interested in investing. AZZARELLO's brother sent AZZARELLO a few business plans to give to people in California who might be interested in investing. His brother even suggested particular people who lived in California. His brother's job was to get investors, so he was acting as an employee and representative of NAVAGILITY when he contacted AZZARELLO to invest. AZZARELLO knew through his brother that he was one of many potential investors he contacted. (AZZARELLO decl., ¶ 12 and Ex. A.)

Like many other investors, AZZARELLO decided to invest based on discussions with his brother and on information sent by Tony DiMarco ("DiMarco"), NAVAGILITY's Founder, President and Managing Member. (DiMarco decl., ¶ 2.) Both AZZARELLO's brother and DiMarco sent

---

[1] An "angel investor" is defined by Wikipedia as "an affluent individual who provides capital for a business start-up, usually in exchange for convertible debt or ownership equity. A small but increasing number of angel investors organize themselves into angel groups or angel networks to share research and pool their investment capital."

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1  AZZARELLO the information, and asked AZZARELLO to invest, in their capacities as officers and
2  representatives of NAVAGILITY.  (AZZARELLO decl., ¶¶ 13-17 and Ex. A.)
3        The information they sent AZZARELLO included a business plan and Operating Agreement.
4  Based on the information the NAVAGILITY representatives sent to AZZARELLO in California, he
5  made the decision to invest.  AZZARELLO sent his check to DiMarco in December 2004 from his
6  home in California.  In March 2005, after certain delays relating to NAVAGILITY's organization,
7  DiMarco mailed AZZARELLO documents to sign, with a cover letter.  The cover letter is addressed
8  to AZZARELLO in California and says "Dear Tom."  DiMarco mailed AZZARELLO the documents
9  and the letter to AZZARELLO's home in California.  In the letter, DiMarco thanked AZZARELLO
10 for his investment, and explained his equity percentage.  Enclosed with the letter was the
11 NAVAGILITY Operating Agreement.  (Id. ¶¶ 14-17 and Ex. A.)
12       In April 2007, DiMarco sent the "bridge loan offer" via e-mail to "investors," including
13 AZZARELLO.  DiMarco sent the offer  to AZZARELLO knowing that he lived in California.
14 Contrary to what DiMarco says, AZZARELLO's brother did not contact AZZARELLO about the
15 bridge loan prior to DiMarco's e-mail to "investors."  AZZARELLO called his brother after reading
16 the e-mail.  AZZARELLO told his brother, "this looks too good to be true."  But AZZARELLO's
17 brother told him that it was legitimate, and told AZZARELLO that he would definitely get paid
18 $200,000 on October 13, 2007, as stated in the terms of the agreement that DiMarco had sent
19 AZZARELLO.  At the time that AZZARELLO had this conversation with his brother, he was an
20 officer of NAVAGILITY.  The information he gave AZZARELLO about the "bridge loan" was
21 information he got from DiMarco on behalf of NAVAGILITY.  (Id. ¶¶ 18-19 and Exs. B and C.)
22       On April 5, 2007, AZZARELLO sent DiMarco, via Fed Ex, a signed Letter of Acceptance and
23 a check for $100,000 to NAVAGILITY.  AZZARELLO sent the check from California.  The check
24 contains AZZARELLO's California address on it.  (Id. ¶ 21 and Exs. D and E.)  DiMarco endorsed
25 the check for NAVAGILITY and deposited it on April 6, 2007.  (Id. ¶¶ 21 and 22 and Exs. D and E.)
26 On April 9, 2007, DiMarco sent an e-mail thanking AZZARELLO for the check.  In the e-mail, he
27 states he is adding a clause to the agreement and sending AZZARELLO a copy.  The clause that
28 DiMarco added says "In the unlikely event that NAVAGILITY LLC is unable to make the balloon

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

payment due to you on October 13, 2007 in full, you will be given the option to convert your loan amount to equity at your current $5,000,000 valuation (e.g., a $50,000 loan would convert to 1% ownership) OR have a guarantee payment of the balloon payment due at the point in time where NavAgility has generated $3,000,000 in revenue." *This added-on language is not on the copy of the acceptance that AZZARELLO signed. AZZARELLO never agreed to this language as being part of the agreement. DiMarco sent this language to AZZARELLO after he signed his acceptance, after he sent his check, and after his check had been deposited.* (Id. ¶ 23 and Ex. F.)

After receiving DiMarco's e-mail with the added clause, AZZARELLO became concerned, so he e-mailed his brother, saying it sounds like there are strings attached to the original agreement. AZZARELLO's brother replied that NAVAGILITY fully intended to meet its end of the agreement. (Id. ¶¶ 24 and 25 and Ex. G.) AZZARELLO saw no reason to be concerned any further because the terms in the agreement were very clear, and because AZZARELLO had relied on his brother's statement and his brother was an officer of NAVAGILITY and a 14.55% owner. (Id. decl., ¶¶ 26, 38 and Ex. M.)

So AZZARELLO waited for the October 2007 payment date, fully expecting to be repaid. (AZZARELLO decl., ¶¶ 27-28 and Ex. H.) In September 2007, DiMarco sent another e-mail directed and addressed to AZZARELLO. In that e-mail, he said: "Your bridge loan was the first and so you are the first in line to receive payment." (Id. ¶ 28 and Ex. H.) In October, two days after payment was due, DiMarco sent another e-mail directed and addressed to AZZARELLO. DiMarco says in the e-mail that he plans to make the repayment of the bridge loan in two payments of $100,000 of principal then another payment of $100,000 in interest. (Id. ¶ 29 and Ex. I.)

DiMarco sent AZZARELLO another e-mail on December 19, 2007. In that e-mail, *DiMarco admits that NAVAGILITY owes the principal plus interest of the bridge loan*, but says that there will be a delay. This is what NAVAGILITY said: "Unfortunately, our cash position has not changed and we are still unable to make a partial or full payment on the $200,000 due to you." (Id., ¶ 30 and Ex. J.)

Hearing nothing for months, AZZARELLO finally became impatient and e-mailed DiMarco in March 2008. AZZARELLO asked DiMarco when he would be paid and offered a payment plan. On March 24, 2008, he received another e-mail from DiMarco. After waiting for six months past the

1  due date of the loan, DiMarco asked AZZARELLO to wait indefinitely and offered no repayment plan.
2  (Id., ¶¶ 31-32 and Exs. K and L.)
3       From April 2005 to March 2008, **AZZARELLO received 29 e-mails from NAVAGILITY**,
4  with, among other things, quarterly reviews, updates about meetings, potential clients, and acquirers.
5  26 of the e-mails were from DiMarco. Some of the e-mails were addressed to AZZARELLO
6  personally and others were addressed to "investors," **but all of them were sent to AZZARELLO in**
7  **California**. DiMarco has known since prior to AZZARELLO's 2004 investment that he lived in
8  California. (Id., ¶ 36.)
9       DiMarco says that six out of the seven bridge loan "investors" reside in New York. So what?
10 Even if the other investors live in New York, that does not mean that the significant portion of the
11 loaned money came from New York. The minimum amount that NAVAGILITY allowed to
12 participate in the bridge loan was $25,000.00. And NAVAGILITY was looking for a total $300,000
13 commitment. AZZARELLO is the highest loan participant at $100,000. This means the six investors
14 residing in New York loaned the remaining $200,000. Thus, the California resident accounts for over
15 30% of the total bridge loan amount. (Id., ¶ 37 and Ex. B.)
16      DiMarco says in his declaration that the owners of 97.86% of NAVAGILITY, including
17 himself, live in New York. But DiMarco owns *75.60%* of NAVAGILITY himself. (Id., ¶ 38 and
18 Ex. M.) And personal jurisdiction has nothing to do with investment amount, especially in a case
19 having to do with a loan. What matters is that NAVAGILITY reached out to AZZARELLO –
20 repeatedly.

21                    **III. LEGAL ARGUMENT**
22      **A.**     **The Exercise of Personal Jurisdiction is Proper**
23      California may assert personal jurisdiction over a foreign defendant on any basis consistent
24 with the state and federal Constitutions. Code Civ. Proc. § 410.10. It is required that the defendant
25 have "such minimum contacts with the state that the assertion of jurisdiction does not violate
26 '"traditional notions of fair play and substantial justice. <u>International Shoe Co. v. Washington</u>, (1945)
27 326, U.S. 310, 316. The test of minimum contacts is flexible and cannot be answered by the
28 application of precise formulas or mechanical rules. <u>Kulko v. Calif. Sup. Ct.</u>, (1978) 436 U.S. 84, 92.

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1  NAVAGILITY is subject to general jurisdiction as a result of its national (including California) reach,
2  California clients, and California investment source.

3    NAVAGILITY is subject to jurisdiction even if its "contacts" with California are not sufficient
4  for general jurisdiction. "Limited" or "specific" personal jurisdiction, or jurisdiction associated with
5  the acts that form the basis for the complaint, is appropriate because (a) NAVAGILITY purposefully
6  directed its activities toward AZZARELLO, a resident of California, or otherwise established contacts
7  with the California; (b) AZZARELLO's cause of action arises out of or results from NAVAGILITY's
8  forum-related contacts; and (c) the exercise of personal jurisdiction is reasonable, i.e., comports with
9  " fairplay and substantial justice." Burger King Corp. v. Rudzewicz, (1985) 471 US 462, 477-478;
10 Yahoo! Inc. v. La Ligue Contre Le Racisme Et LIAntisemitisme, 433 F.3d 1199, 1206 (9th Cir.
11 2006)(en banc). The Ninth Circuit has adopted a "flexible approach" that may allow personal
12 jurisdiction without meeting each of the above factors: "Jurisdiction may be established with a lesser
13 showing of minimum contacts if considerations of reasonableness dictate." Ochoa v. J.B. Martin &
14 Sons Farms, Inc., 287 F.3d 1182, 1188, fn. 2 (9th Cir. 2002).

15   Personal jurisdiction is appropriate "if the defendant has 'purposefully directed' his activities
16 at residents of the forum [cit.], and the litigation results from alleged injuries that 'arise out of or relate
17 to' those activities [cit]." Burger King, 471 U.S. at 472; Helicopteros Nacionales de Colombia v. Hall,
18 (1984) 466 U.S. 408, 414. The "purposeful availment" requirement protects against a nonresident
19 being haled into local courts solely as the result of "random, fortuitous or attenuated" contacts over
20 which it had no control. Burger King, 471 US 286, at 476. The foreseeability that is critical to due
21 process analysis . . . is that the defendant's conduct and connection with the forum state are such that
22 he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v.
23 Woodson, 444 U.S. 286, 297. This is in part because of a state's interest in providing its residents a
24 forum for redressing injuries inflicted by out of state actors. It is unfair to allow such out-of-staters
25 to avoid being held accountable in the place where injury proximately resulted. Kulko, 436 U.S. 84,
26 96. The same ease of communication and transportation that led to the out-f-state in the first place
27 makes it less unfair to require litigation in the forum where he/it caused injury. Burger King, 471 U.S.
28 at 4732, 474; Keaton v. Hustler Magazine, Inc., (1984) 465 U.S. 770, 776.

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1   Contracting parties who "reach out beyond one state to create continuing relationships and
2   obligations with citizens of another state" may be found to have "purposefully availed themselves
3   of benefits and protections under the other state's laws. Burger King, 471 U.S. at 474. Even a single
4   act may support limited personal jurisdiction over a nonresident. McGee v. International Life Ins. Co.,
5   (1957) 355 U.S. 220, 78 S.Ct. 199; Yahoo!, supra, 433 F.3d at 1210 (en banc)–single forum state
6   contract sufficient if cause of action arises out of that particular purposeful contract. If plaintiff would
7   not have suffered loss "but for" defendant's activities, this element is satisfied. Ballad v. Savage, 65
8   F.3d 1495, 1500 (9th Cir. 1995).

9   The exercise of jurisdiction must "comport with fair play and substantial justice." Burger King,
10  471 U.S. at 477-478, 105. The mere fact that local litigation is inconvenient is not enough to defeat
11  reasonableness. Litigation locally must be so gravely difficult that it puts the defendant to a severe
12  disadvantage in comparison to his or her opponent. Requiring the nonresident to defend locally is not
13  constitutionally unreasonable "in this era of fax machines and discount air travel." Scher v. Johnson,
14  911 F.2d 1357, 1365 (9th Cir. 1990). "(W)here a defendant who purposefully has directed his
15  activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the
16  presence of some other considerations would render jurisdiction unreasonable." Burger King, 471
17  U.S. at 477; Ballad v. Savage, 65 F.3d 1495,1500 (9th Cir. 1995). The burden is on the nonresident
18  to prove that the forum's exercise of jurisdiction would not comport with "fair play and substantial
19  justice." Amoco Egypt Oil Co. v. Leones Navigation Co., 1 F.3d 848: 851 (9th Cir. 1993).[2] It is not
20  unreasonable to subject a nonresident to California personal jurisdiction for liability-producing acts
21  which have foreseeable consequences in the forum state. Burger King, 471 U.S. at 479-480.

22  The Ninth Circuit requires analysis of all of the nonresident's "contacts" with the forum state
23  "whether or not those contacts involve wrongful activity by the defendant." Yahoo!, supra, 433 F.3d
24  at 1207. "In Hanson v. Denckla, the Supreme Court noted that 'as technological progress has

---

[2] As a practical matter, jurisdiction is rarely declined on "reasonableness" grounds-especially in cases involving commercial activities impacting the forum state. Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987). A nonresident can alleviate the risk of being sued locally by, among other things, curtailing its activities in the forum state. World-Wide Volkswagen Corp. v. Woodson, (1980) 444 U.S. 286,297, 100 S.Ct. 559, 567.

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1 increased the flow of commerce between States, the need for jurisdiction has undergone a similar
2 increase. [cit] Twenty seven years later, the Court observed that jurisdiction could not be avoided
3 'merely because the defendant did not physically enter the forum state. [cit.] ... It is an inescapable fact
4 of modern commercial life that a substantial amount of commercial business is transacted solely by
5 mail and wire communications across state lines, thus obviating the need for physical presence within
6 a State in which business is conducted. [cit.]" Zippo Mfr. Co. v. Zippo Dot Com, Inc., 952 F. Supp.
7 1119, 1123 (W.D. Pa. 1997). A nonresident may be subjected to personal jurisdiction based on his
8 use of e-mail to communicate with other computer users. "Traditionally, when an entity intentionally
9 reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific
10 jurisdiction is proper . . . Different results should not be reached simply because business is conducted
11 over the Internet." Id. at 1124; see also Digital Equip. Corp. v. Alta Vista Technology, Inc., 960
12 F. Supp. 456, 466 (D Ma 1997). "The speed and ease of [Internet] communications has increased the
13 number of transactions that are consummated without either party leaving the office. There is no
14 reason why the requisite minimum contacts cannot be electronic." Hall v. LaRonde, (1997) 56
15 Cal.App.4th 1342. Indeed, e-mail messages are always the result of active, purposeful
16 communications. Even a single e-mail message to a forum state resident may support the exercise of
17 specific jurisdiction over the nonresident sender. Internet Doorway, Inc. v. Parks, 138 F.Supp.2d 773,
18 774 (S.D. Miss. 2001).
19     NAVAGILITY reached out to AZZARELLO to invest and to borrow money. It communicated
20 with him by e-mail for years. NAVAGILITY created its own obligations with a citizen of California.
21 This is by itself plainly purposeful availment. Personal jurisdiction is proper.
22     **B.    Venue is Proper**
23     NAVAGILITY admits that it bears the burden of proving that venue is improper, but then only
24 argues that this case *could* have been brought in the United States District Court for the Southern
25 District of New York. That the case could have been brought in New York is not evidence that venue
26 in California is improper. NAVAGILITY fails to meet its burden under Fed. R. Civ. P. 12(b)(3) and
27 28 U.S.C. §1406.
28 ////

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1    Where federal subject matter jurisdiction is based solely on diversity of citizenship, venue is proper in a district in which a "substantial part of the events or omissions" on which the claim is based occurred, or where is located a "substantial part of the property" that is the subject of the action. 28 U.S.C. §1391(a)(2). In determining whether venue is proper under § 1391(a)(2), only those events and omissions that directly give rise to the claim are relevant ("only those acts and omissions that have a close nexus to the wrong"). Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003) (in suit to enforce employee's covenant not to compete, court should look to the place the contract was negotiated and executed, and place of performance and breach).

Sections 1391(a)(2) and (b)(2) do not require that a majority of the "events or omissions" occur in the district where suit is filed, nor that the events there predominate. It is sufficient that a "substantial part" occur there. Jenkins Brick, supra, 231 F.3d at 1371; Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d at 558, 563 (8th Cir. 2003) ("we do not ask which district among two ... potential forums is the 'best' venue").

Thus, a plaintiff may choose either of several districts having relatively equal connections with the dispute. First of Mich. Corp. v. Bramlet, 141 F.3d 260, 264 (6th Cir. 1998); TruServe Corp. v. Neff, 6 F. Supp.2d 790, 792 (N.D.Ill. 1988) (personal guarantees signed in one state for payment in another).

In contract actions, where the negotiations took place, where the contract was signed, or where performance or breach occurred are relevant factors in determining where a "substantial part" of the events or omissions occurred. Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867; Jenkins Brick, supra, 321 F.3d at 1371 (2nd Cir. 1992). In Bates, a Pennsylvania collection agency mailed a demand for payment to a debtor who resided in New York but who had incurred debt while living in Pennsylvania. Debtor sued for unfair collection practices. Venue was proper in New York because "a substantial part of the events giving rise to the claim" (i.e., where dunning letter received) occurred in New York.

In 2004, NAVAGILITY reached out to AZZARELLO in California, knowing that he resided in California, seeking investors. Based on the information the NAVAGILITY representatives sent to AZZARELLO in California, he made the decision to invest. NAVAGILITY sent documents to AZZARELLO's home in California for AZZARELLO to execute. (AZZARELLO decl., ¶¶ 12-17.)

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1  In 2007, NAVAGILITY sent the "bridge loan offer" to AZZARELLO via e-mail, knowing that
2  AZZARELLO would receive that e-mail in California. AZZARELLO signed the Letter of Acceptance
3  for the bridge loan in California, then mailed the signed Letter of Acceptance and a check for $100,000
4  to NAVAGILITY from California. (Id., ¶¶ 18-21.) NAVAGILITY cashed the California check. (Id.,
5  ¶¶ 21-22 and Exhibit E.) As NAVAGILITY was well aware, at all times during his dealings with
6  NAVAGILITY, AZZARELLO was in California. Venue in the Northern District of California is
7  proper.

8      **C.    Transfer of the Action is not Mandated by Equitable Considerations**

9      Plaintiff's choice of forum "should be given weight when deciding whether to grant a motion
10 to change venue." Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th Cir. 1998). A
11 transfer will not be ordered simply to make it more convenient for defendant: "The venue transfer
12 provisions of Section 1404(a) are not meant to merely shift the inconvenience to the plaintiff." Reed
13 Elsevier, Inc. v. Innovator Corp., 105 F.Supp.2d 816, 821 (S.D.OH. 2000) (internal quotes omitted).
14     Courts generally should not order a transfer unless the "convenience" and "justice" factors
15 strongly favor venue elsewhere. Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317
16 (9th Cir. 1985). Because plaintiff's choice of forum is entitled to deference, the moving party has the
17 burden of showing that "the convenience of parties and witnesses" and "interest of justice" requires
18 transfer to another district. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th
19 Cir. 1979); Los Angeles Memorial Coliseum Comm'n v. NFL, 89 F.R.D. 497, 499 (C.D.Cal. 1981),
20 aff'd (9th Cir. 1979) 726 F.2d 1381. "When the transferee forum is no more convenient than the
21 chosen forum, the plaintiff's choice should not be disturbed." In re Volkswagen of America, Inc., 506
22 F.3d 376, 385 (5th Cir. 2007).
23     Convenience of witnesses is often the most important factor. Defendants should inform the
24 court of who the witnesses are, where they are located, what their testimony will be, and why such
25 testimony is relevant or necessary. A.J. Industries, inc. v. United States Dist. Ct., 503 F.2d 384, 389
26 (9th Cir. 1974); Palace Exploration Co. v. Petroleum Develop. Co., 316 F.3d 1110, 1121 (10th Cir.
27 2003). The court can consider not only the number of witnesses located in the respective districts, but
28 also the nature and quality of their testimony in relation to the issues in the case. Brandon Apparel

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

1  Group, Inc. v. Quitman Mfg. Co. Inc., 42 F.Supp.2d 821, 834 (N.D.Ill. 1999). A party seeking a
2  transfer cannot rely on vague generalizations as to convenience factors. The party is obligated to
3  identify the key witnesses to be called, and to present a generalized statement of what their testimony
4  would include. Jeller Fin'l Inc. v. Midwhey Powder Co. 883 F.2d 1286, 1293 (7th Cir. 1989).

NAVAGILITY argues that AZZARELLO is the only witness located in California, but other than identifying names of purported witnesses, NAVAGILITY does not state what their testimony will be, or why their testimony is relevant or necessary to these proceedings. One of the supposed witnesses is NAVAGILITY's lawyer and another is just concerned about his own investment and had nothing to do with AZZARELLO's loan. (AZZARELLO decl., ¶¶ 59-60.) In fact, there are only two potential witnesses other than AZZARELLO: DiMarco, and AZZARELLO's brother, who lives in Italy, and is willing to come to California to testify. (AZZARELLO decl., ¶ 57.) NAVAGILITY has failed to demonstrate that either "the convenience of parties and witnesses" and "interest of justice" require transfer.

### IV. CONCLUSION

AZZARELLO respectfully requests that the motion be denied in its entirety.

DATED: June 19, 2008                    **HUDDLESTON LAW GROUP**

By _____
JOAN E. PRESKY, ESQ.
Attorneys for Plaintiff TOM AZZARELLO

HUDDLESTON LAW GROUP
500 Ygnacio Valley Road, Suite 300
Walnut Creek, CA 94596
Tel: (925) 947-0100
Fax: (925) 947-0111

OPPOSITION TO MOTION TO DISMISS
Mtn.Dismiss.Opp.wpd/mh                    13