United States District Court<br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM AZZARELLO, | No. C-08-2371 MMC |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| NAVAGILITY, LLC, | |
| Defendant. | |

Before the Court is defendant Navagility, LLC's ("Navagility") "Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue," filed May 30, 2008. Plaintiff Tom Azzarello ("Azzarello") has filed opposition, to which Navagility has replied.[1] On September 4, 2008, the Court deemed the matter suitable for decision on the papers. (See Order filed September 4, 2008.) Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

## BACKGROUND[2]

Navagility is a limited liability company organized under the laws of New York and with its principal place of business in Poughkeepsie, New York. (See DiMarco Decl. ¶ 2.) Anthony M. DiMarco ("DiMarco"), a New York resident, is its founder, President, and

---

[1] In connection with its reply, Navagility filed a Supplemental Declaration of Anthony M. DiMarco, to which Azzarello has filed an Objection, on the ground said declaration introduces new facts and gives rise to new legal issues to which Azzarello did not have an opportunity to respond in his opposition. The Objection is hereby sustained.

[2] The following facts are not in dispute.

1  Managing Member. (See id.) Navagility has no employees, business facilities, or offices
2  in California. (See id. ¶¶ 3, 5.) Navagility is not registered to do business in California,
3  has no corporate filings with the Secretary of State of California, and does not file tax
4  returns in California. (See id. ¶ 3.)

     Azzarello is a resident of California. (See Azzarello Decl. ¶ 7.) In December 2004
Azzarello invested $50,000 in Navagility, (see id. ¶ 8), by which he obtained a 1.41%
ownership of its equity, (see DiMarco Decl. ¶ 4). Of the thirty-three other equity investors,
thirty-two are citizens of New York, and one is a citizen of New Jersey. (See id.)

     On April 4, 2007, DiMarco sent by email a bridge loan offer to investors, including
Azzarello.[3] (See Azzarello Decl., Ex. B). The email sought $300,000 in bridge loans to
support Navagility's "career management business" and its "emerging social network
business" until future revenue could be obtained, and solicited investments from existing
investors in increments of $25,000. (See id.) The loans were to be repaid on October 13,
2007 in a "single balloon payment" equivalent to two times the principal investment. (See
id.) The email was not addressed directly to Azzarello; rather, it was addressed to DiMarco
himself and blind carbon copied to existing investors in the company, including Azzarello.
(See id.) After reading the offer, Azzarello consulted his brother who was living in New
York and working as Navagility's "Chief Experience Officer." (See Azzarello Decl. ¶¶ 9,
19.) Azzarello's brother assured him, by phone, that the offer was legitimate. (See id.) On
April 5, 2007, Azzarello signed a Letter of Acceptance and sent a check for $100,000 to
Navagility in New York. (See id. ¶ 21.) On April 9, 2007, DiMarco sent Azzarello an email
thanking him for the check and stating DiMarco was adding a clause to the agreement,
providing options if repayment was made late. (See id. ¶ 23.) Azzarello did not expressly
consent to these terms but rather emailed his brother to inquire about them. (See id. ¶ 24.)
Azzarello's brother assured him that Navagility intended to meet their end of the
agreement. (See id. ¶ 25.) As of October 2007, Navagility had not repaid Azzarello. (See

---

[3] A "bridge loan" constitutes "interim financing for an individual or business until the permanent or the next stage of financing can be obtained." (See Opp'n at 3:27- 4:2.)

id. ¶ 29.) The parties thereafter exchanged four emails regarding the delay, which Navagility attributed to a lack of funds. (See id. ¶¶ 29-32.) On May 9, 2008 Azzarello filed the instant complaint.

**LEGAL STANDARD**

A plaintiff bears the burden of establishing personal jurisdiction. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Consequently, when a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting [such] jurisdiction." See Amba Mktg. Sys. v. Jobar Int'l, 551 F.2d 784, 787 (9th Cir. 1977). Where the motion will be decided on the parties' respective written submissions, the plaintiff need only make a prima facie showing that personal jurisdiction exists; in that regard, the court accepts as true the uncontroverted allegations in the complaint and resolves any factual disputes in the plaintiff's favor. See Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

Where, as here, no federal statute governs personal jurisdiction, the district court applies the law of the forum state. See id. Because California's long-arm statute permits courts to exercise personal jurisdiction to the extent permitted by the Due Process Clause, personal jurisdiction in the instant action is proper if the requirements of due process are met. See Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1485-86 (9th Cir. 1993). Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 1485 (quoting International Shoe Co. v. Washington, 3256 U.S. 310 316 (1945).

**DISCUSSION**

**A. General Jurisdiction**

A court's exercise of personal jurisdiction may be based on either general jurisdiction or specific jurisdiction. See Panavision Int'l., L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). General jurisdiction exists where "a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" See id. "Longevity,

3

1 continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006). Azzarello asserts Navagility is subject to general jurisdiction. The record before the Court reflects, however, that Navagility has no offices, facilities or employees outside of New York, its investors are, with minor exception, all citizens of New York, and its contacts with California are of a limited nature. Under such circumstances, Azzarello has failed to make a prima facie showing that Navagility is subject to general jurisdiction in California.

**B. Specific Jurisdiction**

Specific jurisdiction over a nonresident defendant is appropriate when a three-part test is satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-06 (9th Cir. 2006). The plaintiff bears the burden on the first two prongs. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff meets that burden, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. See id.

In applying the above test to contract actions, the court ordinarily looks to whether the defendant purposefully availed itself of the privilege of conducting activities in the forum state. See, e.g., Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). "'Purposeful availment' requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Id. (internal quotation and citation omitted). Parties who are domiciled outside the forum state who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to jurisdiction in the forum state. See Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985).

In the instant case, Azzarello, relying on Burger King, argues that he has met his burden as to the first prong of the above-described test because Navagility "reached out to [him] through e-mail, knowing he lived in California, both to invest and to borrow money." (See Opp'n at 1:6-8.)   As discussed below, Azzarello's argument is not persuasive.

At the outset, the Court notes, and Azzarello's argument implicitly acknowledges, the formation of a contract with a citizen of the forum state will not, by itself, support the exercise of personal jurisdiction over a nonresident defendant.  See Burger King at 478. The additional circumstances identified by Azzarello, however, whether viewed separately or in combination, do not suffice to establish the requisite minimum contacts.

First, although the solicitation of a contract is relevant to the jurisdictional analysis, Burger King requires more than such "reaching out."  See Burger King at 479 (finding jurisdiction where defendant not only "reached out" to plaintiff in forum state, but did so for purposes of negotiating contract that "had a *substantial* connection with that State") (internal quotation and citation omitted) (emphasis in original)); see also Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991) (noting "[i]t is important to distinguish contract from tort actions," in which, by contrast, courts are "allowed the exercise of personal jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state") (internal quotation and citation omitted) (emphasis in original)).

Nor does the addition of Navagility's use of email to communicate with Azzarello in California alter the equation.  See Peterson v. Kennedy, 771, F.2d 1244, 1262 (9th Cir. 1985) (holding "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state" (internal quotation and citation omitted) (alteration in original)).   Similarly, knowledge that a party to a transaction resides in the forum state fails to establish the necessary minimum contacts.  See Boschetto, 535 F.3d at 1014, 1018 (finding no jurisdiction in buyer's home state despite nonresident seller's knowledge of

buyer's location).

Rather, it is the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" that "determin[e] whether the defendant purposefully established minimum contacts with the forum." See Burger King, 471 U.S. at 479. As the Supreme Court has observed, "the future consequences . . . themselves are the real object of the business transaction." See id. (internal quotation and citation omitted); see also Roth, 942 F.2d at 622 (holding "*future consequences* of [ ] contract" to make film based on defendant's novel, e.g., editing, production work and advertising in forum state, tipped otherwise "close call" in favor of finding purposeful availment) (emphasis in original)); Sher, 911 F.2d at 1362 (holding purposeful availment requires conduct that "allows or promotes the transaction of business within the forum state") (internal quotation and citation omitted) (emphasis added).

Here, in contrast to those cases in which personal jurisdiction has been found, the contract at issue envisioned no ongoing relationship or consequences in California. See, e.g., Burger King, 471 U.S. at 479 (finding jurisdiction where parties entered into "long-term franchise" agreement providing for "20-year relationship that envisioned continuing and wide-reaching contacts . . . in [forum state]"); Sher, 911 F.2d at 1363 (finding jurisdiction where Florida law partnership required California client to execute deed of trust to California real estate, thus "looking to the laws of California to secure its right to payment under its contract").

Rather, the bridge loan transaction constituted a discrete encounter; the agreement was signed by Azzarello on April 5, 2007 and repayment was to be made by a "single balloon payment" on October 13, 2007. The contract creating the loan contemplated no further action by either party after the repayment date. Put another way, the instant contract was a "one-shot affair." See Boschetto, 535 F.3d at 1017 (adopting district court's characterization of contract; noting sale of car on eBay created no ongoing obligations in buyer's state); see also Roth, 942 F.2d at 622 ("This was not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the

forum."). Nor did Azzarello's California location have any bearing on the terms or execution of the agreement. The purpose of the transaction was to obtain short-term financing for the operations of a company that is based in and operates out of New York. Other than the mailing of Azzarello's check, no performance in California was contemplated. Cf. Roth, 942 F.2d at 622 (finding jurisdiction where performance of contract was to take place primarily in forum); Sher, 911 F.2d at 1363 (basing finding of jurisdiction on execution of deed to California real estate).

To the extent Azzarello relies on the parties prior dealings in connection with Azzarello's role as an investor in Navagility, such reliance is unavailing, as such dealings are not relevant to the instant analysis. "[I]n a breach of contract case, it is only the 'dealings *between the parties in regard to the disputed contract*' that are relevant to the minimum contacts analysis." See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 153 (3d Cir. 1996) (emphasis in original)). As Azzarello himself concedes, "This lawsuit does not have to do with the investment. It is a simple claim, based on a loan that Navagilty failed to repay." (See Opp'n at 3: 24-26.)

In sum, Azzarello's showing is legally insufficient to enable this Court to exercise personal jurisdiction over Navagility.

**CONCLUSION**

For the reasons stated above, Navagility's motion to dismiss for lack of personal jurisdiction is hereby GRANTED and the instant action against Navagility is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: October 16, 2008

MAXINE M. CHESNEY
United States District Judge

7